UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ELISANDRA MOOTOO,                                    **COMPLAINT**

                                    Plaintiff,        Plaintiff Demands
         -against-                                    Trial by Jury

TAMMY CARE PHARMACY, INC., and
USMAN HABIB,
                                    Defendants.
----------------------------------------------------------------X


        Plaintiff by her attorneys, DeTOFFOL & GITTLEMAN, Attorneys at Law, upon

information and belief, complains of the Defendants herein, alleging at all relevant and

materials times and upon information and belief, as follows:

### Nature of The Case

Plaintiffs complain against Defendants pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. Section(s) 2000e et seq., as amended ("Title VII"), and pursuant to

Gibb, 38 U.S. 715 (1966), the New York State Human Rights Law under NYS Executive

Law §296 et. seq. ("NYSHRL"),  the New York City Human Rights Law under NYC

Administrative Code § 8-107(4) et. seq. ("NYCHRL") and New York common law

assault and battery, and seek damages to redress the injuries Plaintiff has suffered as a

result of race and sex discrimination, hostile work environment, retaliation, and wrongful

termination.


### Jurisdiction & Venue

1.      Jurisdiction of this action is conferred upon the Court insofar that this action

involves a federal question under Title VII of the Civil Rights Act. The Court, pursuant to

1

*Gibb*, 38 U.S. 715 (1966), also has supplemental jurisdiction over the Counts based on laws of the State of New York.

2.      Venue is proper in this district under 28 U.S.C. §1391(b) and otherwise based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York, and Plaintiff was employed by Defendants within the Southern District of the State of New York.

3.      Plaintiff received a Right to Sue Letter dated December  27, 2022, and this Complaint has been filed within 90 days of receipt of the aforementioned permission letter [*Right to Sue Letter Annexed hereto*].

4.

Claimant alleges that at all relevant times and upon information and belief, as follows:

5.      Claimant ELISANDRA MOOTOO ("Ms. Mootoo" or "Claimant") is a female individual who resides in Bronx County in the City and State of New York.

6.      Respondent TAMMY CARE PHARMACY, INC. ("Pharmacy") is a domestic business corporation duly formed and registered under the laws of the State of New York.

7.      Respondent TAMMY CARE PHARMACY, INC. operates a medical prescripbiton filling pharmacy business holding itself out to the public and doing business as "Tammy Care" at 2641 Jerome Avenue, Bronx, New York 10468 ("Workplace").

8.      Respondent USMAN HABIB ("Mr. Habib") is an individual, and employee, independent contractor, agent, and/or servant of the co-Respondent Pharmacy.

9.      Mr. Habib was a Pharmacy employee holding the title, role and duties of 'Pharmacist'.

2

10.     Mr. Habib supervised and held supervisory authority and command through the Respondent Pharmacy to hire, review, manage, promote and terminate Ms. Mootoo.

11.     On or around February 13, 2021, Ms. Mootoo, and experience d pharmacy technician submitted her resume for consideration to the Pharmacy for the position of "Pharmacy Technician", via a website information sharing website "Indeed".

12.     On or about February 14, 2021, Ms. Mootoo was contacted by Mr. Habib and invited to visit into the Pharmacy Workplace for a midday interview on February 15, 2021.

<u>**Discrimination**</u>

13.     On February 15, 2021 Ms. Mootoo arranged for a friend to drive her to the Workplace interview as she was not immediately familiar with the area, and did not want to be late due to parking issues.  Initially said friend agreed to wait in their car, and drive Ms. Mootoo home after the interview.

14.     Upon Ms. Mootoo arrival at the Pharmacy Workplace she was interviewed by Mr. Habib.

15.     During the interview Mr. Habib asked Ms. Mootoo what her personal responsibilities were, including asking if she had a boyfriend or a child.  When speaking a about proposed rate of pay, Mr. Habib conveyed to Ms. Mootoo that he salary request was higher than what was being offered, but that he would "speak to someone above him" to approve the requested rate because he liked her.

16.     While not making any outside communication to others, after about twenty minutes later in the interview process, Mr. Habib hired Ms. Mootoo to fulfill the role of "Pharmacy Technician".

17.    Ms. Mootoo accepted the offered position, and Mr. Habib invited her to stay on at the Pharmacy Workplace to begin at that moment commencing then as a paid training session to prepare her the following day, her first full day on February 16, 2021.

18.    Ms. Mootoo agreed to immediately commence the training session with Mr. Habib and informed Mr. Habib that she had to briefly step out to notify the individual who drove her to the Pharmacy to inform them that she would no longer require a ride home.

19.    Mr. Habib then trained Ms. Mootoo for approximately two hours, showing her what her daily duties would entail with the Pharmacy Technician processes and cash register systems.  After the training session Ms. Mootoo readied herself to leave and Mr. Habib left with her, locking up and closing the Pharmacy for the day, although it was only around 4pm and the Pharmacy hours are 9am – 7pm.

20.    Mr. Habib insisted on driving Ms. Mootoo home, and as she was not very familiar with the area, and did not have a car of her own, so she agreed.  During the relatively short journey Mr. Habib vaguely mentioned to having a controlling interest in the Pharmacy and pharmacies elsewhere, and if she admired his car, and what kind of cars she liked.

21.    Upon arriving at her home, Ms. Mootoo thanked Mr. Habib and reaffirmed she would be at the Pharmacy at 10:00 a.m. the following day.

22.    Ms. Mootoo indeed arrived at the Pharmacy Workplace at 10:00 a.m. on February 16, 2021 to begin her employment as a Pharmacy Technician, however Mr. Habib was not there so she offered to assist another pharmacist who was there ("Pharmacist II").

23.     Ms. Mootoo attended to her duties as set out during her previous days' training session under the supervision of Pharmacist II, until Mr. Habib arrived at the Pharmacy at approximately 12 noon.

24.     Upon Mr. Habib's arrival he repeatedly and persistently put his arm around Ms. Mootoo's waist and shoulder, and sat or stood unnecessarily close to her. Habib went out of his way to inappropriately touch Ms. Mootoo whenever he passed by her which created a very uneasy and uncomfortable feeling for Ms. Mootoo, to which she politely gestured and made more distance.

25.     Mr. Habib asked Ms. Mootoo where she parked, which prompted a conversation about her need to periodically add money to the meter.

26.     Ms. Mootoo retrieved her phone and wallet from her bag which was stowed in a closet for employee personal items, so she could set an alarm and keep it with her to determine when she needed to add money to the meter.

27.     When Ms. Mootoo finally went to check her car, she saw that had already received a parking violation ticket, therefore she did not add money to the meter, and returned to the Pharmacy.  Upon her return she slid her phone into the waistband of her pants so she could immediately return to her duties, not taking the time to stop at the closet to stow her phone.

28.     Ms. Mootoo went to Mr. Habib's station where he again put his arm around her waist, whereupon she gently backed away.

29.     Ms. Mootoo in walking to the front counter bent down for an item, while Mr. Habib noticeably leered at her backside.  When she returned to his workstation area, he again

put his arm around her waist drawing her nearer and plunged his hand into her rear of her pant waistband, caressing her buttocks and lifting away her phone.

30.    Ms. Mootoo felt very compulsively cringed, felt frightened and violated yet found courage to request that he return her phon.   Instead Mr. Habib held onto it for approximately five minutes, then gave it back to her and walked out of the Pharmacy.

31.    Ms. Mootoo felt very embarrassed, distressed, upset and demeaned as a result of having her personal space and belongings violated while at repeatedly being groped in sensitized and otherwise erogenous zones by Mr. Habib.

32.    Left standing in a state of shame, Ms. Mootoo decided and informed Pharmacist II that she would leave and not return.

33.    Ms. Mootoo exited the Pharmacy and sat in her car to collect herself and steady her nerves before she felt calm enough to safely drive.   While waiting she saw Mr. Habib nearby re-entering the Pharmacy so she folded down in her seat, afraid, wanting to hide from him until should could compose herself and calmly drive away.

34.    During this time Ms. Mootoo received a text on her phone from Mr. Habib asking her if she was on a lunch break.   She replied by asserting her complaint that she was very upset about his inappropriate conduct towards her, to the point of being uncomfortable to return into Pharmacy.

35.    Mr. Habib responded that he was treating her "like family" conveying that she had to get along in that hostile environment, to which Ms. Mootoo replied professionally and assertively that she is not family, that she just met Mr. Habib yesterday.

36.    Ms. Mootoo collected herself then went to the NYPD 52nd Precinct later that day, where she made a report and was then taken to a Special Victims Unit.   The Special

Victims Unit procured videos from February 16, 2021 of the inappropriate encounters and touching by Mr. Habib.

37.    Upon information and belief, Mr. Habib created this type of hostile work environment for prior other female workers.

38.    Upon information and belief, the Respondent Pharmacy was aware prior to Ms. Mootoo's employed treatment, the Respondent Mr. Habib had created this type of hostile work environment for prior other female workers.

39.    Ms. Mootoo was issued an Order of Protection against Mr. Habib.

**Damages**

40.    Claimant remains embarrassed and disgusted about the aforementioned unwelcome depraved interrelation, and is left struggling to find a job since constructively forced away from the Respondent's Workplace.

41.    The effect of this Workplace harassment transformed Claimant into feeling uncomfortable about her image in view of her co-workers in her profession, her own self esteem and image, demoralized in her new role at the Workplace that no reasonable person could tolerate, leaving her no choice but to leave from employment with the Pharmacy.

42.    Claimant was caused to suffered, sustain and continue to suffer from emotional distress caused by the happening of the aforementioned incidents.

43.    Claimant also suffers economic damage, from loss of earning continuing into the future, being now without employment as a result of her constructive termination.

44.

45.     Plaintiff has suffered from the effect of the aforementioned recent inappropriate, disturbing behavior and gender-based sexual discrimination, hostile work environment, and retaliation, causing emotional distress and anxiety.

46.     Plaintiff has suffered and continues to suffer economic and emotional distress, depression humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

47.     Defendants' acts and omissions caused Plaintiff to feel emotionally and physically violated and agitated, for Defendant's unfair and different treatment of them apart from other employees.

48.     Defendants retaliated to Plaintiff's rightful complaints by wrongfully consdtructuvely terminating Plaintiff.

49.     As a result of the acts and conduct complained of herein, Plaintiff has suffered emotional pain, suffering, inconvenience, non-pecuniary losses, as well as pecuniary losses.

50.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands a punitive damage assessment against Defendants.

51.     In sum, Plaintiffs seeks damages for past and future lost wages, emotional distress, attorneys' fees, and punitive damages.

**COUNT 1**
**UNDER FEDERAL TITLE VII**
**Sex & Race Discrimination**
**(Against Defendant Entity)**

52.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this Complaint.

53.     This claim is authorized and instituted pursuant to the provisions of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42

U.S.C. § 1981, for relief based upon the unlawful employment practices of Defendants.

54.     Plaintiff complains of Defendants violation of Title VII's prohibition against

discrimination in employment based, in whole or in part, upon an employee's sex,

gender, and race.

55.     SEC. 2000e-2. [Section 703] states as follows:

(a) Employer practices
It shall be an unlawful employment practice for an employer -
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate
against any individual with respect to his compensation, terms, conditions, or privileges
of employment, because of such individual's race, color, religion, sex, or national origin;
or
(2) to limit, segregate, or classify his employees or applicants for employment in any
way which would deprive or tend to deprive any individual of employment opportunities
or otherwise adversely affect his status as an employee, because of such individual's
race, color, religion, sex, or national origin.

56.     Defendants violated the section cited herein as set forth and engaged in unlawful

employment practices prohibited by 42 U.S.C. §2000e et seq., by creating and

maintaining a hostile discriminating work environment against Plaintiff because of her

sex, gender, and race.

**COUNT 2**
**UNDER FEDERAL TITLE VII**
**Retaliation**
**(Against Defendant Entity)**

57.   Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this Complaint.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides
that it shall be unlawful employment practice for an employer:
(1) to . . . discriminate against any of his employees . . . because he has opposed any
practice made an unlawful employment practice by this subchapter, or because he has
made a charge, testified, assisted or participated in any manner in an investigation,
proceeding, or hearing under this subchapter.

58.   Defendants violated the section cited herein as set forth and retaliated against

Plaintiff because she opposed Defendants' unlawful employment practices.

**COUNT 3**
**UNDER N.Y.S. EXECUTIVE LAW**
**Sex & Race  Discrimination**
**(Against Defendant Entity)**

59.   Plaintiff repeats, reiterates and realleges each and every allegation made in the

above paragraphs of this Complaint as if more fully set forth herein at length.

60.   Executive Law § 296 provides that :

1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing
agency, because of an individual's age, race, creed, color, national origin, sexual
orientation, military status, sex, disability, predisposing genetic characteristics, marital
status, or domestic violence victim status, to refuse to hire or employ or to bar or to
discharge from employment such individual or to discriminate against such individual in
compensation or in terms, conditions or privileges of employment.

61.   Defendants violated the section cited herein as set forth and engaged in an

unlawful discriminatory practice by creating and maintaining a hostile discriminating

work environment by against Plaintiff because of her sex, gender, and race.

## COUNT 4
## UNDER N.Y.S. EXECUTIVE LAW
### Retaliation
### (Against Defendant Entity)

62.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this Complaint.

63.     New York State Executive Law §296(7) provides that it shall be an unlawful:

For any person engaged in any activity to which this section applies to retaliate or
discriminate against any person because [s]he has opposed any practices forbidden
under this article.

64.     Defendants violated the section cited herein as set forth and engaged in an

unlawful discriminatory practice by retaliating and otherwise discriminating against the

Plaintiff because of Plaintiff's opposition to the unlawful employment practices of

Defendants.

## COUNT 5
## UNDER N.Y.S. EXECUTIVE LAW
### Aiding & Abetting
### (Against All Defendants)

65.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this Complaint.

66.     New York State Executive Law §296(6) provides that it shall be an unlawful

discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts forbidden
under this article, or attempt to do so."

67.     Defendants violated the section cited herein as set forth and engaged in an

unlawful discriminatory practice in violation of New York State Executive Law §296(6)

by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**COUNT 6**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**Sex & Race Discrimination**
**(Against All Defendants)**

68.     Plaintiff repeats, reiterates and realleges each and every allegation made in the

above paragraphs of this Complaint as if more fully set forth herein at length.

69.     The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an

unlawful discriminatory practice:

(a) For an employer or an employee or agent thereof, because of the actual or
perceived age, race, creed, color, national origin, gender, disability, marital status,
sexual orientation or alienage or citizenship status of any person, to refuse to hire or
employ or to bar or to discharge from employment such person or to discriminate
against such person in compensation or in terms, conditions or privileges of
employment.

70.     Defendants engaged in an unlawful discriminatory practice in violation of New

York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining a hostile

discriminating work environment by against Plaintiff because of her sex, gender, and

race.


**COUNT 7**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**NYC Retaliation**
**(Against All Defendants)**

71.     Plaintiff repeats, reiterates and realleges each and every allegation made in the

above paragraphs of this Complaint as if more fully set forth herein at length.

72.     The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall

be unlawful discriminatory practice:

"For an employer... to discharge ... or otherwise discriminate against any person
because such person has opposed any practices forbidden under this chapter..."

73.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

**COUNT 8**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**Aiding & Abetting**
**(Against Individual Defendant)**

74.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

75.     Defendants violated the section cited herein as set forth and engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8-107(19) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**COUNT 9**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**Vicarious Liability**
**(Against Defendant Entity)**

76.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length:

New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by its employees, agents or independent contractors.

(a)     An employer shall be liable for an unlawful discriminatory practice based upon

13

the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

(b)     An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1)     the employee or agent exercised managerial or supervisory responsibility; or

(2)     the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility;  or

(3)     the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

77.     Defendants violated the section cited herein as set forth.

## COUNT 10
## CIVIL BATTERY
## (Against Individual Defendant)

78.     Plaintiff incorporates herein by reference the preceding paragraphs as if fully set forth herein.

79.     Mr. Habib intended to commit an act of unwanted contact and/or caused imminent apprehension of such an act against Plaintiff. He did so by, inter alia:

a. Isolating Plaintiff in closed quarters and dismissing any bystanders; and

b. Initiating or threatening sexual contact.

80.     Mr. Habib did commit an unwanted contact with Plaintiff in a harmful or offensive manner, including but not limited to causing sexual contact between himself and Plaintiff.  Mr. Habib 's battery of Plaintiff caused harm, including physical, mental, and/or emotional harm to Plaintiff.  Mr. Habib 's conduct was committed within the scope of his employment at Defendant Entity.

14

## Relief

WHEREFORE, Plaintiff respectfully demands against Defendants on each and every respective Count:

(a)     An award to Plaintiff of compensatory damages in an amount to be determined at trial for all damages including but not limited to economic damages for lost past back pay and future front pay wages and attendant benefits;

(b)     An award to Plaintiff of compensatory damages in an amount to be determined at trial for all damages including but not limited to past and future non-economic damages for humiliation, pain and suffering and emotional distress sustained;

(c)     An award to Plaintiff of the costs of this action, including their reasonable attorney's fees to the fullest extent permitted by law;

(d)     An award of punitive damages in an amount to be determined at trial; and

(e)     Such other and further relief as this Court deems necessary and proper.

## Jury Demand

Plaintiff requests a jury trial on all issues to be tried.


s/ David DeToffol, Esq.

David DeToffol, Esq.
DeTOFFOL & GITTLEMAN, Attorneys at Law
125 Maiden Lane – Suite 5C
New York, New York  10038
Tel. (212) 962-2220
Attorneys for Plaintiff